No. 22-35857

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BLUE MOUNTAINS BIODIVERSITY PROJECT
*Plaintiff-Appellant,*
v.

SHANE JEFFRIES, et al.,
*Defendants-Appellees.*

_____

On Appeal from the United States District of Oregon, Case No. 2:20-cv-02158-MO

## BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION IMMIGRANTS' RIGHTS PROJECT AND ACLU OF OREGON IN SUPPORT OF PLAINTIFF-APPELLANT

Kelly K. Simon
ACLU FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
(971) 322-0869
ksimon@aclu-or.org

Cody Wofsy
Katrina Eiland
Hannah Schoen
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org
keiland@aclu.org
hschoen@aclu.org

*Counsel for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici* state that they have no parent corporations. No publicly owned corporation holds ten percent or more of the stock of *amici*, as they do not issue any stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .................................................................. ii

TABLE OF CONTENTS ............................................................................................... iii

TABLE OF AUTHORITIES ....................................................................................... iiv

INTEREST OF *AMICI CURIAE* .................................................................................. 1

INTRODUCTION ........................................................................................................... 2

ARGUMENT .................................................................................................................. 3

    I.    LOGS ARE A CRITICAL TOOL TO ASSESS THE GOVERNMENT'S
        ASSERTION THAT MATERIALS ARE DELIBERATIVE. .......................3

    II.   THE COURT SHOULD REHEAR THIS CASE AND ELIMINATE THE
        SUGGESTION OF AN IMPOSSIBLY HIGH STANDARD TO OBTAIN
        A LOG OF ASSERTEDLY DELIBERATIVE MATERIALS....................10

CONCLUSION ............................................................................................................. 17

CERTIFICATE OF COMPLIANCE .......................................................................... 18

CERTIFICATE OF SERVICE ..................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Blue Mountains Biodiversity Project v. Jeffries et al.*,
   72 F.4th 991 (9th Cir. 2023) .......................................................... passim

*Bartell Ranch LLC v. McCullough*,
   No. 3:21-cv-00080-MMD-CLB, 2022 WL 2093053
   (D. Nev. June 10, 2022) ................................................................... 9, 12

*Batalla Vidal v. Duke*,
   295 F. Supp. 3d 127 (E.D.N.Y. 2017), ................................................ 8

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ........................................................................ 13

*Clinch Coal. v. U.S. Forest Service.*,
   597 F. Supp. 3d 916 (W.D. Va. 2022) .............................................. 4, 15

*Department of Homeland Security v. Regents of the Univ. of California*,
   140 S. Ct. 1891 (2020) .................................................................... 8, 12

*Desert Survivors v. U.S. Dep't of the Interior*,
   231 F. Supp. 3d 368 (N.D. Cal. 2017) ............................................... 6

*Desert Survivors v. U.S. Dep't of the Interior*,
   No. 16-CV-01165-JCS, 2017 WL 1549373 (N.D. Cal. May 1, 2017) ............... 10

*Friends of the Clearwater v. Higgins*,
   523 F. Supp. 3d 1213 (D. Idaho 2021) ............................................... 15

*FTC v. Warner Commc'ns Inc.*,
   742 F.2d 1156 (9th Cir. 1984) .......................................................... 6

*Ill. Coal. for Immigrant & Refugee Rts., Inc. v. Wolf*,
   No. 19 C 6334, 2020 WL 7353408 (N.D. Ill. Dec. 15, 2020) ................ 9

*In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,
    156 F.3d 1279 (D.C. Cir. 1998) ............................................................14

*In re United States*,
    875 F.3d 1200 (9th Cir. 2017) ............................................... 5, 8, 13, 14

*Inland Empire—Immigrant Youth Collective v. Nielsen*,
    No. EDCV 17-2048 PSG (SHKx), 2019 WL 13240629
    (C.D. Cal. Apr. 8, 2019) ......................................................................7

*Institute for Fisheries Resources v. Burwell*,
    No. 16-cv-01574-VC, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017) .................5, 11

*Mach Mining, LLC v. E.E.O.C.*,
    575 U.S. 480 (2015) ...........................................................................3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .............................................................................4

*New York v. U.S. Immigr. & Customs Enf't*,
    438 F. Supp. 3d 216 (S.D.N.Y. 2020) ................................................4, 6

*Oceana v. Ross*,
    920 F.3d 855 (D.C. Cir. 2019) .......................................................... 14, 15

*Regents of the University of California v. Department of Homeland Security*,
    No. C 17-05211 WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017). ...............8

*Sierra Club v. Zinke*,
    No. 17-CV-07187-WHO, 2018 WL 3126401 (N.D. Cal. June 26, 2018) ............6

*United States v. Charley*,
    1 F.4th 637 (9th Cir. 2021). .................................................................10

*Washington v. U.S. Dep't of Homeland Sec.*,
    No. 4:19-CV-5210-RMP, 2020 WL 4667543 (E.D. Wash. Apr. 17, 2020) .........8

*Xerces Soc'y for Invertebrate Conservation v. Shea*,
    No. 3:22-CV-00790-HZ, 2023 WL 4941221 (D. Or. July 17, 2023) .......... 11, 15

# INTEREST OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonpartisan, public interest organization of nearly two million members dedicated to protecting the fundamental rights and liberties that U.S. law guarantees to all persons. The ACLU Immigrants' Rights Project engages in a nationwide litigation and advocacy program to enforce and protect the constitutional and civil rights of immigrants. The legal issues in this case are of significant interest to the ACLU Immigrants' Rights Project, which has litigated numerous cases before various courts involving claims under the Administrative Procedure Act.

The American Civil Liberties Union of Oregon ("ACLU of Oregon") is an Oregon non-profit and non-partisan organization with over 28,000 members. As a state affiliate of the national ACLU organization, ACLU of Oregon is dedicated to defending and advancing the civil rights and civil liberties of Oregonians. That includes working in partnership with the ACLU Immigrants' Rights Project to challenge the federal agency decisions that significantly impact the lives of immigrant Oregonians.[1]

---

[1] All of the parties have consented in writing to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), the undersigned counsel certifies that counsel for amici authored this brief in whole, and that no person other than amici curiae contributed money to preparing or submitting this brief.

## INTRODUCTION

In *Blue Mountains Biodiversity Project v. Jeffries*, a panel of this Court held that deliberative materials are not part of an agency's administrative record under the Administrative Procedure Act ("APA"). *Amici* write to address one specific aspect of that decision: the panel's statement that plaintiffs may be required to make "a showing of bad faith or improper behavior" to obtain a log of allegedly deliberative documents. 72 F.4th 991, 997 (9th Cir. 2023). Even if the panel is correct that deliberative materials are generally not part of the record—a question *amici* do not address—the ability of litigants to access a log of withheld materials presents an independent, critically important issue in the immigration context and beyond. Indeed, when considering the proper standard for obtaining a log, the key question is not whether deliberative materials are part of the administrative record, nor how to define that category of deliberative materials, but rather: *Who decides* whether a document is deliberative?

Under the unprecedented "bad faith or improper behavior" standard for obtaining a log, plaintiffs and courts will almost never even know what documents are being withheld—and thus will have no opportunity to contest and decide whether purportedly deliberative materials are being wrongfully withheld. That standard would give agencies unchecked authority to exclude materials without court review; needlessly disadvantage plaintiffs seeking to hold the government to Congress's

directives; and create perverse incentives for agencies to designate ever increasing swaths of material as deliberative. "[C]ompliance with the law would rest in the [agency's] hands alone." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 495, 488 (2015).

This issue is vitally important. As in various other areas of law, the APA is key to holding federal immigration authorities accountable for violations of the Immigration and Nationality Act and its implementing regulations, as well as the APA's requirements of reasoned decisionmaking. And the ability to obtain a log has been particularly important in *amici*'s cases, including litigation against a policy change stripping young people of their protections under the Deferred Action for Childhood Arrivals (DACA) program. The Court should grant *en banc* or panel rehearing, and should revisit the standard for obtaining a log of purportedly deliberative materials. Alternatively, the panel should amend its opinion to clarify that "bad faith or improper behavior" is not required to obtain such a log.

## ARGUMENT

## I.   LOGS ARE A CRITICAL TOOL TO ASSESS THE GOVERNMENT'S ASSERTION THAT MATERIALS ARE DELIBERATIVE.

An APA plaintiff's ability to obtain a log of withheld documents is critical to effective judicial review of agency action, including of whether the agency's decision "runs counter to the evidence before the agency" or "relied on factors which

Congress has not intended it to consider." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). With a log, plaintiffs can evaluate and contest whether documents an agency excludes from the record are, in fact, deliberative, and courts can review the correctness of the agency's determinations. But without a log, plaintiffs generally have no way of knowing which materials were excluded from the administrative record or the reasons the agency designated them as deliberative—effectively forcing plaintiffs and courts to take the government's word for it.

As one court recently explained, the availability of a log speaks to "who decides whether the documents are, in fact, predecisional and deliberative—the agency or the court." *Clinch Coal. v. U. S. Forest Serv.*, 597 F. Supp. 3d 916, 923 (W.D. Va. 2022) (holding that "the court has the final say"); *see also New York v. U.S. Immigr. & Customs Enf't*, 438 F. Supp. 3d 216, 218 (S.D.N.Y. 2020) ("[i]t does not follow from [the] premise" that deliberative materials are outside the administrative record that "courts should not have a role in reviewing whether this privilege was properly invoked and applied to particular documents so withheld").

That question—"Who decides?"—is particularly important because whether a particular document is deliberative can be a complex and contestable inquiry. First, there is no clear definition of what constitutes deliberative material. Nor did the *Blue Mountains* panel offer any such definition in concluding such materials fall

outside of the administrative record. Rather, it indicated that deliberative materials are "prepared to aid the decision-maker in arriving at a decision," and are related to "the mental processes of administrative decisionmakers." 72 F.4th at 997 (internal quotation marks omitted). But that raises far more questions than it answers.

For example, the category of "deliberative" documents might be understood to include only those materials that directly bear on decisionmakers' "mental processes," such as "transcripts of literal deliberations among the members of a multi-member agency board." *In re United States*, 875 F.3d 1200, 1210 (9th Cir.), *cert. granted, judgment vacated on other grounds,* 583 U.S. 29 (2017). On the other hand, agency officials might attempt to label all sorts of documents as "deliberative." *See, e.g.*, *Institute for Fisheries Resources v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) (rejecting agency's position that documents like agency emails and memoranda could be categorically excluded from the administrative record). Indeed, in many of *amici*'s cases, the administrative record is made up of whatever materials the decisionmakers *chose* to consider—and so the entire record itself might be described as having been "prepared to aid the decision-maker in arriving at a decision," and thus shedding light on their "mental processes." *Blue Mountains*, 72 F.4th at 997 (internal quotation marks omitted).

Second, to the extent the panel intended to rely on existing caselaw regarding the deliberative process privilege to define the category of deliberative material, the

application of that privilege to any particular document is likewise contestable. This Court applies four non-exclusive factors to assess the privilege, *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984), and many courts within this Circuit also consider four additional factors, *see, e.g.*, *Desert Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 380 (N.D. Cal. 2017). Moreover, a single document may include both privileged agency deliberation and non-privileged factual material, requiring careful document-by-document review. *See Warner Commc'ns*, 742 F.2d at 1161. In sum, whether a particular document, or part of a document, falls within the privilege is rarely black and white.

Thus, court review is critical. After all, as with any contestable issue, differences of opinion will abound, and parties (including the federal government) are likely to adopt positions on these questions advantageous to their own institutional interests. Judicial review allows the contours of the category of deliberative materials to be clarified through precedent and policed through litigation. *See New York*, 438 F. Supp. 3d at 218 (explaining courts are "expert" at making determinations of whether the deliberative process privilege applies). But "[t]he only way [for courts] to know if privilege applies is to review the deliberative documents in a privilege log." *Sierra Club v. Zinke*, No. 17-CV-07187-WHO, 2018 WL 3126401, at *5 (N.D. Cal. June 26, 2018).

*Amici*'s experience confirms that a log can be an essential tool for ensuring judicial review and addressing overbroad designations of materials as deliberative. For example, in *Inland Empire—Immigrant Youth Collective v. Nielsen*, the ACLU Immigrants' Rights Project challenged a policy change threatening to upend the lives of thousands of DACA recipients. No. EDCV 17-2048 PSG (SHKx), 2019 WL 13240629 (C.D. Cal. Apr. 8, 2019). In administrative record litigation, Plaintiffs sought a log of withheld documents, including those the agency claimed were deliberative. *See id.* at *3. The court granted the request, reasoning "that it would be very difficult, if not impossible, for an APA plaintiff to challenge a claim" that withheld documents were deliberative "without at least some description of the document over which privilege is asserted." *Id.* at *6. Critically, upon reviewing the log, it turned out that many of the agency's deliberative designations were overly broad and indefensible. The production of a log allowed the agency's designations to be examined, and resulted in the agency adding additional key documents to the record.

Privilege logs have been important to other immigration challenges, including to the government's efforts to rescind DACA beginning in 2017. In *Regents of the University of California v. Department of Homeland Security*, the government contended that it made the decision to rescind DACA—a program with over 800,000 beneficiaries—based on an administrative record that consisted of just fourteen

documents, or 258 pages, all of which were already publicly available. No. C 17-05211 WHA, 2017 WL 4642324, at *3 (N.D. Cal. Oct. 17, 2017). The district court ordered a privilege log, which brought to light that the administrative record was incomplete and that the government had improperly withheld documents. *Id.* at *5 & n.6 ("privilege log entries reveal several documents that were considered in arriving at the decision to rescind DACA" that were not included in the record, including media articles). This Court refused to disturb the district court's order, finding that the requirement to produce a log of "assertedly deliberative documents" was reasonable. *In re United States*, 875 F.3d at 1210. Similarly, in *Batalla Vidal v. Duke*, the district court ordered a privilege log, 295 F. Supp. 3d 127, 145–46 (E.D.N.Y. 2017), and the Second Circuit upheld that order, noting that a log was necessary for the district court to be able to evaluate the agency's privilege assertions, *In re Nielsen*, No. 17-3345, Dkt. 171 at 3 (2d Cir. Dec. 27, 2017). In the end, these suits preserved DACA for hundreds of thousands of young people. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020).[2]

---

[2] Similarly, courts ordered privilege logs in litigation challenging the public charge ground of inadmissibility, which chilled noncitizens from accessing life-saving benefits for which they were eligible. *See, e.g.*, *Washington v. U.S. Dep't of Homeland Sec.*, No. 4:19-CV-5210-RMP, 2020 WL 4667543, at *4-*5 (E.D. Wash. Apr. 17, 2020) (rejecting argument that, where "DHS is deciding unilaterally that the withheld material is privileged under the deliberative process, . . . there is no

Other examples outside the immigration context reinforce the importance of privilege logs. In one instance, the Bureau of Land Management withheld thousands of documents as deliberative—but, once the court ordered a log, it came to light that the agency had never individually assessed whether these documents should be part of the administrative record, and many were not deliberative at all. *See Bartell Ranch LLC v. McCullough*, No. 3:21-cv-00080-MMD-CLB, 2022 WL 2093053, at *2, *4 (D. Nev. June 10, 2022). The agency explained that these documents had been omitted due to its practices for generating administrative records: Agency employees added documents to a "case file" as they were generated, which became the administrative record in the event of litigation. *Id.* at *3. The agency simply presumed that all documents not added to the case file were deliberative without actually reviewing them to assess the accuracy of that presumption. *Id.* As the *Bartell Ranch* court explained, it was "not clear [that] Defendants *ever* would have reviewed these six to eight thousand documents" for inclusion in the administrative record if "the Court had not ordered Defendants to either include deliberative documents or note their exclusion in a privilege log." *Id*. at *4 (emphasis added);

---

need to reveal the nature of the withheld material"); *Ill. Coal. for Immigrant & Refugee Rts., Inc. v. Wolf*, No. 19 C 6334, ECF No. 192 (N.D. Ill. Aug. 04, 2020) (minute entry ordering the production of a privilege log); 2020 WL 7353408, at *2 (N.D. Ill. Dec. 15, 2020) (determining that the court would assess, "on a document-by-document basis, whether to sustain or overrule DHS's assertions of the deliberative process privilege.").

*see also, e.g.*, *Desert Survivors v. U.S. Dep't of the Interior*, No. 16-CV-01165-JCS, 2017 WL 1549373, at \*10 (N.D. Cal. May 1, 2017) (determining, after *in camera* review, that several documents withheld by the agency and noted on a privilege log were not subject to the deliberative process privilege and were properly part of the administrative record).

The lesson of these cases is clear. Disagreements and errors are inevitable when the government excludes materials from the administrative record as deliberative. Logs allow plaintiffs to challenge, and courts to police, those decisions. By contrast, denying plaintiffs access to logs would leave these questions entirely in the hands of the agencies—undermining judicial review and harming immigrant and other communities.

## II.  THE COURT SHOULD REHEAR THIS CASE AND ELIMINATE THE SUGGESTION OF AN IMPOSSIBLY HIGH STANDARD TO OBTAIN A LOG OF ASSERTEDLY DELIBERATIVE MATERIALS.

In *Blue Mountains*, the panel stated that "'a showing of bad faith or improper behavior' might justify production of a privilege log to allow [courts] to determine whether excluded documents are actually deliberative." 72 F.4th at 997 (internal citation omitted).[3]  At least one district court has already interpreted the opinion as requiring that extremely high showing before any log may be ordered. *See Xerces*

---

[3] This statement appears to be dicta. However, even dicta is often binding in this circuit. *United States v. Charley*, 1 F.4th 637, 649 n.8 (9th Cir. 2021).

*Soc'y for Invertebrate Conservation v. Shea*, No. 3:22-CV-00790-HZ, 2023 WL 4941221, at *4 (D. Or. July 17, 2023) (citing *Blue Mountains*). Without correction, plaintiffs in nearly all APA cases could be denied access to logs—dramatically impairing the important role logs play in such cases. The Court should therefore grant *en banc* or panel rehearing, and clarify that obtaining a log does not require a showing of "bad faith or improper behavior."

The consequences of this standard for APA litigation are serious. Indeed, it is safe to assume that only a rare plaintiff would be able to demonstrate "bad faith or improper behavior" to the satisfaction of a court. That is particularly so because, in the absence of a log, plaintiffs would typically have no way of knowing what records an agency has even withheld from the record, let alone be able to make that case that documents were withheld because of "bad faith or improper behavior." And if plaintiffs almost never get logs, courts will almost never be in a position to assess the validity of agencies' determination that certain materials are deliberative.

The high standard would thus invite agencies to withhold whatever materials they deem appropriate. As noted above, the scope of what is deliberative is debatable, and the "bad faith or improper behavior" standard would give agencies nearly unchecked power to expand the definition and a strong incentive to err on the side of withholding more documents. *See, e.g.*, *Institute for Fisheries Resources*, 2017 WL 89003, at *1 (noting "the government's reliance on an overly narrow

understanding of the universe of materials that may need to be included in the administrative record"). It also could facilitate agencies' decisions to improperly withhold documents, knowing plaintiffs would be unlikely to discover misconduct or demonstrate bad faith. While courts sometimes apply a presumption of regularity when it comes to government conduct, *see Blue Mountains*, 72 F.4th at 997, the extraordinarily high "bad faith or improper behavior" standard would make that presumption effectively *irrebuttable*. Placing such unqualified trust in agencies to decide for themselves what qualifies as deliberative materials—and hoping they will always resist the urge to over-designate items that are embarrassing or harmful to their litigating position—does far more harm to the APA's values of judicial oversight than can be justified. *See Regents of the Univ. of Cal.*, 140 S. Ct. at 1905.

A bad faith standard would also preclude plaintiffs from obtaining a log where documents are excluded *inadvertently*, through carelessness or incorrect application of the standard, rather than through misconduct. In *Bartell Ranch*, for example, the district court specifically noted that it could not find bad faith in the Bureau of Land Management's flawed method of compiling the administrative record. 2022 WL 2093053, at *3–5. Had the court not ordered a log, there would have been no way for plaintiffs to know the scope or nature of the thousands of withheld documents, and the error never would have come to light. *Id*. at *4. No presumption of regularity justifies effectively barring plaintiffs from this critical tool to unearth such errors.

Nor is the "bad faith or improper behavior" standard supported by caselaw. That phrase appears to be drawn from the Supreme Court's decision in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). But *Overton Park* addressed a far different question. There, the Court indicated that agency officials might be required to give *actual testimony* to explain the factors they considered in taking an agency action. *Id*. In that context, the Court explained that in an ordinary case "a strong showing of bad faith or improper behavior" would be required before "*examining the decisionmakers themselves*." *Id*. (emphasis added). Whatever the merits of that standard when it comes to interrogating agency officials, *Overton Park* nowhere suggests the same standard should apply to the far less intrusive step of merely obtaining a *log* of existing materials the agencies *assert* are deliberative. *See also In re United States*, 875 F.3d at 1212 (Watford, J., dissenting) (pointing to the *Overton Park* standard in discussing when "documents reflecting an agency's internal deliberations" may be "made part of the record," rather than the standard for obtaining a log).

To amici's knowledge, no court of appeals has ever held that a plaintiff must show bad faith or impropriety to obtain a log of assertedly deliberative materials withheld from the administrative record. *See In re Nielsen*, No. 17-03345, Dkt. 171 at 3 (rejecting the government's position because "without a privilege log, the

District Court would be unable to evaluate the Government's assertions of privilege."); *Defs. of Wildlife v. U.S. Dep't of the Interior*, No. 18-2090, Dkt. 70 at 2 (4th Cir. Feb. 5, 2019) (requiring the agency to submit a privilege log); *In re United States*, 875 F.3d at 1206 (finding no clear error in district court decision ordering privilege log based on "clear evidence" that agency decisionmakers considered other materials).

Contrary to the panel's opinion, 72 F.4th at 996, even the D.C. Circuit's decision in *Oceana v. Ross*, 920 F.3d 855 (D.C. Cir. 2019), did not adopt this rule. *Oceana* mentioned the "bad faith or improper behavior" standard in passing, *id*. at 865, citing to an earlier D.C. Circuit decision that had addressed the showing required to render "the *actual subjective motivation* of agency decisionmakers" relevant to arbitrary and capricious review, *see In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (citing *Overton Park*). But the balance of *Oceana* makes clear that no such standard is required to merely obtain a log. Rather, the court explained that a log may be justified by a "substantial claim of . . . special circumstances,", including "where a substantial showing was made that the record was incomplete." 920 F.3d at 865 (cleaned up).

On rehearing, this Court could follow the example of other courts to clarify that, where the plaintiffs have made an adequate threshold showing, a log is an

appropriate mechanism to test whether excluded documents are truly deliberative. The Court could endorse the flexible and workable standard adopted by the great majority of district courts within this Circuit and hold that a log may be ordered where plaintiffs show a "reasonable, non-speculative grounds for the belief" that the record is incomplete. *See, e.g.*, *Friends of the Clearwater v. Higgins*, 523 F. Supp. 3d 1213, 1226 (D. Idaho 2021) (internal quotation marks omitted). Other courts have alternatively required "'clear evidence'" that additional documents "were considered by agency decisionmakers." *Clinch Coal.*, 597 F. Supp. 3d. at 921–22. And, as noted, the D.C. Circuit has indicated that logs may be available where plaintiffs make a "substantial showing . . . that the record was incomplete." *Oceana*, 920 F.3d at 865.

In the alternative, the Court could amend its opinion to more clearly leave open the question of the proper standard to obtain a log. The panel stated its intent to "leave for another day a detailed exploration of the precise circumstances under which a district court can order the production of a privilege log," 72 F.4th at 997, but, as noted above, at least one district court has already read the opinion to require "bad faith or improper behavior," *Xerces Soc'y*, 2023 WL 4941221, at *4. If the Court is inclined to leave this question for a future case, it could delete the following text from the opinion:

> Because deliberative materials are "not part of the administrative record to begin with," they are "not required to be placed on a privilege log."

> *Oceana*, 920 F.3d at 865 (cleaned up). We agree, however, with the
> D.C. Circuit that "a showing of bad faith or improper behavior" might
> justify production of a privilege log to allow the district to determine
> whether excluded documents are actually deliberative. *Id.*; *see also In
> re United States*, 875 F.3d 1200, 1211–12 (9th Cir. 2017) (Watford, J.,
> dissenting) (discussing potential circumstances justifying expansion of
> the AR), *vacated*, ⸺ U.S. ⸺, 138 S. Ct. 443, 445, 199 L.Ed.2d 351
> (2017). But, BMBP does not assert any misconduct by the Service, nor
> does it contend that specific documents were improperly classified as
> deliberative.

72 F.4th at 997. In its place, the Court could substitute language to the following

effect: "Whether materials are in fact deliberative is subject to judicial review, and

in appropriate circumstances district courts may order a privilege log to aid in that

analysis."

# CONCLUSION

The Court should grant *en banc* or panel rehearing. Alternatively, the panel should revisit its discussion of the standard to obtain a log of materials withheld as deliberative.

Date: October 12, 2023

Kelly K. Simon
ACLU FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
(971) 322-0869
ksimon@aclu-or.org


*Counsel for Amici Curiae*

Respectfully submitted,

/s/ Cody Wofsy
Cody Wofsy
Katrina Eiland
Hannah Schoen
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org
keiland@aclu.org
hschoen@aclu.org

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the limitation set forth in Ninth Circuit Rule 29-2(c)(2) because it contains 3,845 words, exclusive of the portions of the brief that are exempted by Rule 32(f). I certify that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Cody Wofsy
Cody Wofsy
October 12, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2023, I electronically filed the foregoing

Brief of *Amici Curiae* with the Clerk for the United States Court of Appeals for the

Ninth Circuit by using the CM/ECF system. A true and correct copy of this brief has

been served via the Court's CM/ECF system on all counsel of record.

/s/ Cody Wofsy
Cody Wofsy
October 12, 2023