No. 22-35857

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BLUE MOUNTAINS BIODIVERSITY PROJECT,

*Plaintiff/Appellant*,

v.

SHANE JEFFRIES, *et al.*,

*Defendants/Appellees*,

On Appeal from the United States District Court
for the District of Oregon
Case No. 2:20-cv-02158-MO

## BRIEF OF SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, CHARLESTON WATERKEEPER, CHATTOOGA CONSERVANCY, MOUNTAINTRUE, WILD VIRGINIA, CONSERVATION LAW FOUNDATION, CLINCH COALITION, VIRGINIA WILDERNESS COMMITTEE, CHEROKEE FOREST VOICES, AND DEFENDERS OF WILDLIFE AS *AMICI CURIAE* IN SUPPORT OF APPELLANT'S PETITION FOR REHEARING OR REHEARING *EN BANC*

J. Patrick Hunter
SOUTHERN ENVIRONMENTAL
 LAW CENTER
48 Patton Avenue, Suite 304
Asheville, NC 28801
Telephone: (828) 258-2023
Email: phunter@selcnc.org

*Counsel for South Carolina Coastal Conservation League, Charleston Waterkeeper, Chattooga Conservancy, MountainTrue, Wild Virginia, Conservation Law Foundation, Clinch Coalition, Virginia Wilderness Committee, Cherokee Forest Voices, and Defenders of Wildlife*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici* state the following:

*South Carolina Coastal Conservation League* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in South Carolina Coastal Conservation League.

*Charleston Waterkeeper* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in Charleston Waterkeeper.

*Chattooga Conservancy* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in Chattooga Conservancy.

*MountainTrue* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in MountainTrue.

*Wild Virginia* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in Wild Virginia.

*Conservation Law Foundation* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in Conservation Law Foundation.

*Clinch Coalition* is a non-profit organization. Virginia Organizing, Inc. is Clinch Coalition's parent corporation. No publicly held corporation holds a 10% or greater ownership interest in Clinch Coalition.

*Virginia Wilderness Committee* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in Virginia Wilderness Committee.

*Cherokee Forest Voices* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in Cherokee Forest Voices.

*Defenders of Wildlife* is a non-profit organization with no parent corporation. No publicly held corporation holds a 10% or greater ownership interest in Defenders of Wildlife.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF CONTENTS .......................................................................................... iv

TABLE OF AUTHORITIES .................................................................................... v

IDENTITY AND INTERESTS OF *AMICI* ............................................................ 1

INTRODUCTION AND BACKGROUND ................................................................ 3

ARGUMENT ............................................................................................................ 8

    I.    *Blue Mountains Biodiversity Project* presents an issue of exceptional importance nationwide............................................................................................ 8

    II.    *Blue Mountains Biodiversity Project* conflicts with the approach taken in other appellate courts. .......................................................................................... 13

    III.    *Blue Mountains Biodiversity Project* will result in miscarriages of justice and judicial inefficiencies. ...................................................................................... 16

    IV.    The Ninth Circuit should not follow *Oceana* ............................................. 18

CONCLUSION ........................................................................................................ 19

CERTIFICATE OF SERVICE ................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Bartell Ranch v. McCullough,*
No. 3:21-cv-00080 (D. Nev. June 10, 2022) ......................................12

*Blue Mountains Biodiversity Project v. Jeffries,*
72 F.4th 991 (9th Cir. 2023) ..........................................................*passim*

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977)................................................................12

*Clinch Coal. v. U.S. Forest Serv.,*
597 F. Supp. 3d 916 (W.D. Va. 2022) .........................................11, 12

*Cross Mountain Ranch Ltd. P'ship v. Vilsack,*
No. 09-CV-01902-AP, 2010 WL 11556810 (D. Colo. Apr. 28, 2010) ......................................................................................................9

*Defenders of Wildlife v. U.S. Dep't of the Interior,*
931 F.3d 339 (4th Cir. 2019) ...............................................10, 13, 14

*Defenders of Wildlife v. U.S. Forest Serv.,*
No. 3:22-CV-00034 (W.D. Va. June 8, 2022)...................................17

*Dep't of Com. v. New York,*
139 S. Ct. 2551 (2019).....................................................................6, 12, 15

*Georgia ForestWatch v. U.S. Forest Service,*
No. 2:19-CV-0077, 2020 WL 13594964 (N.D. Ga. Apr. 22, 2020) ...................8

*Kisor v. Wilkie,*
139 S. Ct. 2400 (2019)........................................................................3

*Michigan v. EPA,*
576 U.S. 743 (2015)............................................................................4

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983)..............................................................................6

*In re Nielsen*,
No. 17-3345, 2017 U.S. App. LEXIS 26821 (2d Cir. Dec. 27,
2017) ................................................................................................14

*Oceana, Inc. v. Ross*,
920 F.3d 855 (D.C. Cir. 2019)....................................................8, 18

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*,
No. CV ELH-16-1015, 2017 WL 3189446 (D. Md. July 27, 2017) ...................9

*S.C. Coastal Conservation League v. Ross*,
431 F. Supp. 3d 719 (D.S.C. 2020) ........................................................9

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*,
No. 2:22-CV-02727 (D.S.C. July 12, 2023)....................................13

*Sierra Club v. U.S. Army Corps of Eng'rs*,
No. 2:20-CV-00396-LEW, 2023 WL 4350730 (D. Me. July 5,
2023) ................................................................................................15

*In re Subpoena Duces Tecum Served on Off. of Comptroller of
Currency*,
145 F.3d 1422 (D.C. Cir. 1998)........................................................18

*In re Subpoena Duces Tecum Served on Off. of Comptroller of
Currency*,
156 F.3d 1279 (D.C. Cir. 1998)....................................................18, 19

*In re United States*,
875 F.3d 1200 (9th Cir. 2017), *vacated on other grounds*, 583 U.S.
29 (2017) ....................................................................................4, 14, 15

*United States v. Nixon*,
418 U.S. 683 (1974).............................................................................4

**Statutes**

5 U.S.C. § 706 ....................................................................................16

**Rules**

Fed. R. App. P. 35(a)(2)........................................................................7

**Other Authorities**

Memorandum from Jeffrey H. Wood, Acting Assistant Attorney
General, Env't & Natural Res. Div., to Selected Agency Counsel
(Oct. 20, 2017) ......................................................................................5

Michael Ray Harris, *Standing in the Way of Judicial Review:
Assertion of the Deliberative Process Privilege in APA Cases*, 53
St. Louis U. L.J. 349 (2009) ................................................................5

U.S. Dep't of Just., Guidance to Federal Agencies on Compiling The
Administrative Record (January 1999)..................................................5

## IDENTITY AND INTERESTS OF *AMICI*[1]

South Carolina Coastal Conservation League, Charleston Waterkeeper, Chattooga Conservancy, MountainTrue, Wild Virginia, Conservation Law Foundation, Clinch Coalition, Virginia Wilderness Committee, Cherokee Forest Voices, and Defenders of Wildlife (collectively *amici*) are non-profit environmental organizations who on occasion bring environmental protection cases under the Administrative Procedure Act in courts around the country, frequently outside the jurisdiction of the Court of Appeals for the Ninth Circuit. *Amici* are often forced to contest strategic, wrongful deliberative process withholdings by federal litigants—several of which are discussed below—and depend on the ability of courts to police those withholdings when necessary. *Blue Mountains Biodiversity Project* harms *amici* because it undermines the ability of courts to exercise their policing function and thus allows federal executive agencies to present a favorable but fictional account of their decision-making processes by omitting from administrative records materials potentially adverse to their litigation positions. It additionally harms *amici* by preventing them from ensuring that courts have the "whole record" before them—as required under the

---

[1] No party or its counsel, or any other person, other than *amici* and their counsel, authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E).

1

Administrative Procedure Act—when evaluating agency action under deferential arbitrary and capricious standards. *Amici* anticipate widespread citation to the case in courts around the country; it is already being used against some *amici* in active litigation outside the Ninth Circuit. *Amici* submit this brief to explain how *Blue Mountains Biodiversity Project*'s embrace of the relevance theory of deliberative process withholdings affects their interests, how it conflicts with approaches taken in other appellate courts where *amici* litigate, why it will produce injustices and judicial inefficiencies, and why the Ninth Circuit should not adopt *Oceana*. Appellants and Appellees have consented to the filing of this brief. *Amici* support Appellant's request for rehearing or rehearing *en banc*.

## INTRODUCTION AND BACKGROUND

The factual evidence courts consider when evaluating most challenges to executive action under the Administrative Procedure Act (APA) is contained in an agency-compiled administrative record. This case is about where ultimate authority lies—with courts or self-interested federal litigants—to determine whether documents must be included in that record or can be secretly withheld based on an agency's characterization of documents as "deliberative." The temptation for agencies to wrest this control from courts is obvious. With courts out of the way, agencies can shape administrative records to their advantage by stretching the bounds of any reasonable view of deliberative process withholdings without risk of judicial correction. As the examples below illustrate, *amici* are increasingly confronted with this litigation tactic. To preserve our system of checks and balances—and restrain abuses of executive power—this authority must ultimately rest with the courts even, as explained below, in the absence of bad faith or impropriety.

Our system requires courts to "perform their reviewing and restraining functions" regarding exercises of executive power. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). This necessarily requires a significant degree of transparency— courts cannot prevent abuses of executive power if they are blind to them. Accordingly, the Supreme Court has long recognized that it "is the province and

duty of [courts] 'to say what the law is' with respect to the claim of privilege" when the executive branch withholds documents during judicial review. *United States v. Nixon,* 418 U.S. 683, 705 (1974) (*quoting Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). This Court has similarly held that ensuring the executive branch does not improperly withhold documents from judicial review "is undoubtedly a proper judicial function." *In re United States*, 875 F.3d 1200, 1205 (9th Cir. 2017), *vacated on other grounds*, 583 U.S. 29 (2017).

Unfortunately, *Blue Mountains Biodiversity Project* "wrests from Courts the ultimate interpretative authority to 'say what the law is' and hands it over to the Executive." *Michigan v. EPA*, 576 U.S. 743, 761 (2015) (Thomas, J. concurring) (citation omitted). It does so by allowing executive agencies to identify documents "prepared to aid the decision-maker in arriving at a decision" and withhold them on *relevance*—not privilege—grounds. According to these agencies, framing this issue in terms of relevance obviates any need to inform the court or opposing parties of the documents' existence and removes courts' ability to review these withholdings except in rare circumstances. Instead, agencies are left with nearly unfettered discretion to withhold highly relevant documents—indeed, documents that may be dispositive under APA review.

This relevance reframing is no accident. Courts have long recognized a rebuttable, qualified deliberative process privilege that must be substantiated,

requires disclosure to courts and opposing parties, and can be overcome for various reasons.[2] Accordingly, long-standing Department of Justice (DOJ) guidance instructed agencies that the "administrative record includes privileged documents and materials" including "deliberative or mental process" materials.[3] To withhold those materials, agencies were to prepare an "index" that "identif[ies] the documents and materials, reflect[s] that they are being withheld, and state[s] on what basis they are being withheld."[4] This index alerted litigants to improper withholdings and allowed them to challenge them in court. But in 2017, DOJ instructed executive agencies to "disregard" that guidance and instead omit agency-designated deliberative materials from administrative records on relevance—not privilege—grounds with no notice to courts or opposing litigants.[5] Per this new theory, deliberative materials are "not relevant" because review of agency decisions under the APA "is limited to an agency's stated reasons for its decisions."[6]

---

[2] *See generally* Michael Ray Harris, *Standing in the Way of Judicial Review: Assertion of the Deliberative Process Privilege in APA Cases*, 53 St. Louis U. L.J. 349 (2009) (explaining history of deliberative process privilege).

[3] U.S. Dep't of Just., Guidance to Federal Agencies on Compiling The Administrative Record 4 (January 1999).

[4] *Id.*

[5] Memorandum from Jeffrey H. Wood, Acting Assistant Attorney General, Env't & Natural Res. Div., to Selected Agency Counsel 1 (Oct. 20, 2017).

[6] *Id.* at 1–2.

This articulation of the scope of review under the APA is a half-truth at best. An "agency's action must be *upheld*, if at all, on the basis articulated by the agency itself," but it must be *struck down* if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 43 (1983) (emphasis added).

Even documents that may qualify for the deliberative process privilege are often *relevant* to these considerations. For example, an agency is unlikely to explain in its stated reasons that its decision runs counter to the evidence before it, but numerous courts have relied on agency-characterized deliberative materials to reach that very conclusion. *See, e.g.*, *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575 (2019) (relying on deliberative materials to find the agency's explanation for its action "incongruent with what the record reveals about the agency's . . . decisionmaking process").

In truth, defendant agencies' argument is not that deliberative materials are irrelevant to *their decisions*—the documents could not be characterized as "deliberative" otherwise. *See Blue Mountains Biodiversity Project v. Jeffries*, 72 F.4th 991, 997 (9th Cir. 2023) (explaining that deliberative materials are "prepared

to aid the decision-maker in arriving at a decision"). Their position is that they can make materials purportedly irrelevant to *the court's* review by designating them deliberative. But that is a determination ultimately for the court, not self-interested litigants.

The stakes here are high. The position embraced by the three-judge panel in *Blue Mountains Biodiversity Project* risks upending judicial review under the APA in the Ninth Circuit and ultimately in courts across the country. If defendant agencies are allowed to present a fictionalized view of their decision-making process by omitting any document the agency self-designates as deliberative without informing the court or opposing parties, judicial review risks becoming a hollow exercise with outcomes determined by what the agency chooses to put in the record rather than the merits of the agency's decision. Because the panel decision presents an issue of exceptional importance nationwide, the Court should grant rehearing or rehearing *en banc*. *See* Fed. R. App. P. 35(a)(2) (stating that *en banc* rehearing is appropriate where "the proceeding involves a question of exceptional importance").

# ARGUMENT

## I. *Blue Mountains Biodiversity Project* presents an issue of exceptional importance nationwide.

The judiciary's role in overseeing the scope of the administrative record is an issue of exceptional importance nationwide. As the examples below illustrate, federal agencies have often sought to withhold materials potentially harmful to their litigation positions on deliberative grounds. Judicial oversight of those designations has prevented agencies from wrongfully excluding those materials from administrative records. Once added, the materials have often proven highly relevant to judicial review. This safeguard—ensuring executive agencies do not wrongfully exclude materials on deliberative process grounds—threatens to disappear under *Blue Mountains Biodiversity Project* and the case it embraced, *Oceana, Inc. v. Ross*, 920 F.3d 855 (D.C. Cir. 2019).

*Amici* can point to multiple examples where materials harmful to an agency's litigation position were initially withheld on deliberative grounds, later added to the administrative record pursuant to court order, and ultimately materially affected the outcome of the case.

For example, *Georgia ForestWatch v. U.S. Forest Service*, No. 2:19-CV-0077, 2020 WL 13594964, (N.D. Ga. Apr. 22, 2020), involved a dispute over whether a planned timber sale constituted "timber production" under the National Forest Management Act. The Forest Service's "stated reasons" explained that its

decision turned on non-timber objectives, but non-public, internal agency documents obtained through the Freedom of Information Act revealed that the project was designed "to meet timber targets." Plaintiffs moved to complete the administrative record[7] with these internal documents which were relied on in the decision-making process and central to issues in litigation. *See* Pls.' Mem. in Supp. of Mot. to Complete or Suppl. the Admin. R., No. 2:19-CV-0077-RWS (N.D. Ga. Sept. 27, 2019), ECF No. 22-1. The Forest Service unsuccessfully sought to shield the documents from the court's review based on the "deliberative process

---

[7] Throughout this brief, *completing* the administrative record refers to adding documents to the record that were before agency decisionmakers but wrongfully excluded from the administrative record in litigation; *supplementing* the record refers to adding materials to the record that were not before agency decisionmakers but may otherwise be relevant to the litigation. *See, e.g.*, *Cross Mountain Ranch Ltd. P'ship v. Vilsack*, No. 09-CV-01902-AP, 2010 WL 11556810, at *2 n.2 (D. Colo. Apr. 28, 2010) (noting "meaningful differences" between completing and supplementing the record). A "'showing of bad faith or improper purpose might be necessary' where plaintiffs seek to supplement the administrative record with documents 'that were neither before the agency nor considered in the decision-making process'" but "no showing of bad faith or improper purpose is necessary" where plaintiffs seek merely completion of the record. *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, No. CV ELH-16-1015, 2017 WL 3189446, at *13 (D. Md. July 27, 2017) (quoting *Ohio Valley Env't Coal. v. Whitman*, No. 3:02-0059, 2003 WL 43377, at *2 (S.D. W. Va. Jan. 6, 2003)). In the latter instance, all that is required is "clear evidence" that the record is incomplete. *S.C. Coastal Conservation League v. Ross*, 431 F. Supp. 3d 719, 723 (D.S.C. 2020). This makes sense—there is no legal or policy reason bad faith should be required to add documents to the record that the agency actually considered in its decision-making process (but omitted from the record when that decision was challenged in court).

9

privilege."[8] Def.'s Resp. to Pls.' Mot. to Compel at 15, No. 2:19-CV-0077-RWS (N.D. Ga. Nov. 1, 2019), ECF No. 25. The case settled after the documents were added to the record.

*Defenders of Wildlife v. U.S. Department of the Interior*, 931 F.3d 339 (4th Cir. 2019) involved an APA challenge to a biological opinion prepared by the U.S. Fish and Wildlife Service. Plaintiffs successfully moved to complete the administrative record with internal agency documents (obtained through the Freedom of Information Act) that were used in the decision-making process over defendant agency's protest that any agency-designated "deliberative materials are not part of the administrative record as a matter of law." Defs.' Resp. in Opp. to Mot. to Compel at 14, *Defenders of Wildlife v. U.S. Dep't of the Interior*, No. 18-2090 (4th Cir. Jan. 4, 2019), ECF No. 62-1. The added materials revealed one of the agency's key conclusions was based on a "wild guess" which undermined the agency's reliance on other, self-serving record materials it had not designated as deliberative. *Defenders of Wildlife,* 931 F.3d at 351. The appellate court struck down the agency decision, finding that it "offered an explanation for its decision that runs counter to the evidence before [it]." *Id.* at 352 (citation omitted).

---

[8] At the time, the agency apparently had not fully transitioned to framing deliberative withholdings as a relevance issue.

Several *amici* are currently challenging a Forest Service rulemaking in the Western District of Virginia. *See Clinch Coal. v. U.S. Forest Serv.*, No. 2:21-CV-00003 (W.D. Va.). There, the Forest Service explained in its final statement of reasons that its rulemaking decision was substantiated by three specific evidentiary pillars but relied on *Oceana* to wholly withhold all materials related to one of the pillars from the administrative record as deliberative and therefore irrelevant. *See Clinch Coal. v. U.S. Forest Serv.*, 597 F. Supp. 3d 916, 920, 922 (W.D. Va. 2022). The agency argued that the documents could only be added to the record upon a "strong showing" of bad faith or impropriety. *Id.* at 921. The court rejected this theory and held instead that the agency's express reliance on omitted documents was clear evidence that the record was incomplete even in the absence of bad faith. The court ordered completion of the record, observing that following *Oceana* "leads to the strange result wherein the agency may claim documents are relevant for purposes of developing its final rule but irrelevant for purposes of the court's review of that final rule." *Id.* at 923. The case is still pending.

Judicial oversight of deliberative withholdings is particularly important because, as *amici* learned in *Clinch Coalition*, judgments about whether a document legally qualifies as "deliberative" are often made by non-lawyer agency staff without review by litigation counsel. According to DOJ, "nothing in [its] regulations" require its attorneys to "review[] a defendant agency's assertion of

privilege." Defs.' Resp. to Second Mot. to Compel at 20, *Clinch Coal. v. U.S. Forest Serv.*, No. 2:21-CV-00003, (W.D. Va. Aug. 12, 2022), ECF No. 95; *see also* Order at 5, *Bartell Ranch v. McCullough*, No. 3:21-cv-00080 (D. Nev. June 10, 2022), ECF No. 246 (disclosing that documents withheld as deliberative had not been reviewed by counsel). This is the extreme outcome enabled by DOJ's strategic 2017 decision to begin systematically presenting this issue as one of relevance instead of privilege: agencies represented by DOJ have taken a common law privilege with contours developed through caselaw and converted it into a determination to be made by non-lawyer agency defendants, without review by litigation counsel, and with virtually no possibility of review by the courts.

These cases all illustrate the importance of preserving the ability of courts to review deliberative process withholdings. Moreover, they all underscore that agency-characterized deliberative documents are often *relevant* to judicial review and used by courts in APA cases. And notably, none of them involved impermissible probing of the "mental processes of administrative decisionmakers"—often asserted as the basis for the deliberative process privilege—which relates to requiring agency officials to "give testimony explaining their action." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Dep't of Com.*, 139 S. Ct. at 2573 (discussing "inquiring into 'the

mental processes of administrative decisionmakers'" in connection with deposing government officials (quoting *Overton Park*, 401 U.S. at 420)).

Federal agencies routinely rely on *Oceana* to attempt to block courts across the country from reviewing their deliberative designations—*i.e.*, from "saying what the law is" with respect to withheld documents—and are starting to similarly rely on the panel decision in *Blue Mountains Biodiversity Project*. Days after the panel's decision, a defendant federal agency in the District of South Carolina cited *Oceana* and *Blue Mountains Biodiversity Project* as establishing the "rule of every federal court of appeals to publish a precedential opinion" on whether purportedly deliberative materials could be excluded from administrative records on relevance grounds rather than privilege. Defs.' Opp. to Mot. to Compel at 2, *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, No. 2:22-CV-02727 (D.S.C. July 12, 2023), ECF No. 26. The significance of these issues and likely widespread citation of *Blue Mountains Biodiversity Project* by federal agencies as judicial precedent spelling a change in the law justifies rehearing *en banc*.

## II.  *Blue Mountains Biodiversity Project* conflicts with the approach taken in other appellate courts.

Other courts of appeal have taken approaches different than the one embraced in *Blue Mountains Biodiversity Project*. For example, in *Defenders of Wildlife v. U.S. Department of the Interior*, the Court of Appeals for the Fourth Circuit ordered the Fish and Wildlife Service in an APA case to "submit a

privilege log in the event the Government withholds any documents under the guise of the deliberative process privilege (or any other privilege)." Order, No. 18-2090 (4th Cir. Feb. 5, 2019), ECF No. 28-1 (granting motion to compel). The order reflects the appellate court's understanding that deliberative process operates as a *privilege* in APA cases and not as a relevancy consideration. Moreover, the order recognizes the reality that agencies sometimes withhold nonprivileged materials inappropriately—even in the absence of bad faith or impropriety—creating a need for judicial oversight.

*In re Nielsen* involved deliberative withholdings in a case challenging the decision to rescind the Deferred Action for Childhood Arrivals program. There, the Court of Appeals for the Second Circuit rejected the argument that "a court may only consider materials that the Government unilaterally decides to present to the court, rather than the record upon which the agency made its decision" because it "would impede the court from conducting the 'thorough, probing, in-depth review' of the agency action with which it is tasked." Order, *In re Nielsen,* No. 17-3345, 2017 U.S. App. LEXIS 26821, at *10 (2d Cir. Dec. 27, 2017) (citation omitted).

*Blue Mountains Biodiversity Project* lacks uniformity with previous cases even in this Circuit. In *In re United States*, this Court upheld the district court's decision to "require a privilege log and evaluate claims of [deliberative process] privilege on an individual basis." 875 F.3d at 1210. In doing so, the Court rejected

the government's argument that "'deliberative' materials are not properly within the administrative record at all." *Id.*

Finally, after *Oceana*, the Supreme Court rejected its reasoning, and the reasoning underpinning *Blue Mountains Biodiversity Project*, in *Department of Commerce v. New York*—an APA case challenging the decision to include a citizenship question on the 2020 census questionnaire. 139 S. Ct. 2551 (2019). There, the district court granted a motion to complete the administrative record with "more than 12,000 pages of internal deliberative materials." *Id.* at 2574. The Supreme Court held that the district court's order was proper *without* any evidence of bad faith. *Id.* at 2574–76. The Court distinguished deliberative process materials from "extra-record discovery"—i.e., the discovery of material that was not before the agency decisionmaker—which does require a showing of bad faith or impropriety. *Id.* at 2574. Not once did the Court question the authority of lower courts to review deliberative withholdings used in the agency's decision-making process—the very authority *Blue Mountains Biodiversity Project* risks stripping away. *See also Sierra Club v. U.S. Army Corps of Eng'rs*, No. 2:20-CV-00396-LEW, 2023 WL 4350730, at *6 (D. Me. July 5, 2023) (explaining that "Federal Defendants' [deliberative process] categorical irrelevance argument is also difficult to reconcile with the Supreme Court's assessment of a district court's actions more recently in *Department of Commerce*").

### III. *Blue Mountains Biodiversity Project* will result in miscarriages of justice and judicial inefficiencies.

Practically, further adoption of the relevance theory of deliberative withholdings embraced in *Blue Mountains Biodiversity Project* will facilitate injustices, thereby undermining trust in our judicial system, and produce judicial inefficiencies. The interests of justice are served when courts instruct federal agencies whether their decisions comport with legal standards when evaluated against the "whole record" as instructed by Congress. *See* 5 U.S.C. § 706. As the examples above illustrate, federal agencies use the relevance theory of deliberative process withholdings to escape "whole record" review. If courts are unable to police this practice—as contemplated by *Oceana* and *Blue Mountains Biodiversity Project*—judicial decisions risk turning more on the agency's strategic compilation of the administrative record rather the merits of its decision, resulting in unjust decisions and undermining public confidence in the courts.

The relevancy theory of deliberative process withholdings also produces judicial inefficiencies. Plaintiffs are often unaware of relevance-based deliberative withholdings because the withholdings are not logged and disclosed. At the same time, when asked to compel completion of the administrative record, courts frequently require plaintiffs to point to specific documents to demonstrate that the record is incomplete and overcome the presumption of regularity. Anticipating the withholding of relevant material from the administrative record, *amici* often submit

16

requests under public records laws to understand the materials before agency decisionmakers. When these requests are not fulfilled consistent with legal requirements (as is often that case), plaintiffs are forced to initiate litigation under public records laws to ensure they are prepared to contest wrongful deliberative process withholdings in separate, APA litigation.

For example, plaintiffs in *Clinch Coalition*, discussed above, sent a Freedom of Information Act request for "information relied upon in the development of [the agency's proposed rule]" in an attempt to understand the information before agency decisionmakers. *See* Exhibit 3 to Compl. at 1, *Defenders of Wildlife v. U.S. Forest Serv.*, No. 3:22-CV-00034 (W.D. Va. June 8, 2022), ECF No. 1-3. Defendant agency failed to respond to the request consistent with its legal obligations, prompting plaintiffs to initiate litigation. *See* Compl. at ¶¶ 27–38, *Defenders of Wildlife v. U.S. Forest Serv.*, No. 3:22-CV-00034 (W.D. Va. June 8, 2022), ECF No. 1. Defendant agency separately withheld many of those documents from the administrative record in litigation over its rule, requiring plaintiffs to move to complete the administrative record in that case. This resulted in two cases litigating over overlapping sets of documents. This inefficiency—which is likely to intensify if the legal theories in *Oceana* and *Blue Mountains Biodiversity Project* prevail—could be mitigated if defendant agencies produced the "whole record" in APA review in the first instance, or, at a minimum, informed

courts and opposing parties when they were withholding materials used in the decision-making process on deliberative process grounds.

### IV.    The Ninth Circuit should not follow *Oceana*.

The Ninth Circuit should reconsider the three-judge panel's embrace of *Oceana, Inc. v. Ross*, 920 F.3d 855, through rehearing *en banc*, because *Oceana* is poorly reasoned. *Oceana* is based on a prior D.C. Circuit case—*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*—a non-APA fraudulent conveyances case that assessed the "common law deliberative process privilege." *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir.), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998). That earlier case explained that the "privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit." *Id.* The government sought rehearing on the narrow issue of whether use of the word "collateral" "suggest[ed] that the deliberate process privilege would not apply in a case where the government action is challenged as arbitrary and capricious under the APA." *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998). Restated, the government sought rehearing to clarify that the deliberative process *privilege* would be *available* in APA cases.

On rehearing, the D.C. Circuit explained that because the "subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing bad faith or improper behavior" in APA cases, the deliberative process privilege would remain generally available. *Id.* at 1279–80. This was at best dictum, issued in a case in which the opposing party had no stake in the issue. Federal agencies thereafter seized on the word "immaterial" to convert a case about preserving the deliberative process privilege into one about relevance. The D.C. Circuit took the bait in *Oceana*. This Court should avoid that mistake.

## CONCLUSION

For these and other reasons articulated by Appellant and supporting *amici*, the Court should grant rehearing *en banc*.

Date: October 12, 2023

*/s/ J. Patrick Hunter*
J. Patrick Hunter (N.C. Bar No. 44485)
SOUTHERN ENVIRONMENTAL LAW CENTER
48 Patton Avenue, Suite 304
Asheville, NC 28801
Telephone:      828-258-2023
Facsimile:      828-258-2024
Email:  phunter@selcnc.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: October 12, 2023

*/s/ J. Patrick Hunter*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-35857

I am the attorney or self-represented party.

**This brief contains** 4,172 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  ☐ it is a joint brief submitted by separately represented parties.

  ☐ a party or parties are filing a single brief in response to multiple briefs.

  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/J. Patrick Hunter **Date** 10/12/2023

*(use "*s/[typed name]*" to sign electronically-filed documents)*